# KEYSTONE DRILLER CO. *v.* NORTHWEST ENGINEERING CORP.*

No. 131.   Argued December 5, 1934.—Decided January 7, 1935.

---

\* Together with No. 132, *Keystone Driller Co.* v. *Harnischfeger Corp.*, and No. 133, *Keystone Driller Co.* v. *Bucyrus-Erie Co.*, certiorari to the Circuit Court of Appeals for the Seventh Circuit.

*Mr. Clarence P. Byrnes,* with whom *Messrs. F. O. Richey* and *H. F. McNenny* were on the brief, for petitioner.

*Mr. Frank Parker Davis,* with whom *Messrs. Henry M. Huxley* and *Louis Quarles* were on the brief, for respondents.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

The petitioner brought suit against each respondent in the District Court for Eastern Wisconsin, charging infringement of claim 4 of the Clutter patent, No. 1,317,431, claims 6 and 7 of the Wagner patent, No. 1,476,121, and claims 6 and 9 to 14, inclusive, of the Downie patent, No. 1,511,114. The suits were consolidated and the court found that the claims were valid and infringed. The Circuit Court of Appeals concluded that none of the respondents' machines infringed claim 4 of the Clutter patent, and that the specified claims of the Wagner and Downie

patents were invalid for lack of invention.[1]  By reason of asserted conflict of decision [2] we granted certiorari.[3]

The patents in question relate to excavator attachments used in connection with a base carrying suitable machinery for operating the lines or cables controlling the attachments.  As the machinery on the base is no part of the structure disclosed, it is not the subject of any of the patents.

## 1. THE CLUTTER PATENT.

Claim 4 of the patent is:

" In an excavating machine a pivoted boom, a scoop-carrying member pivotally connected therewith, a pulling member for elevating and lowering said boom, *a pivotal*

---

[1] 70 F. (2d) 13.

[2] In *Byers Machine Co.* v. *Keystone Driller Co.*, 44 F. (2d) 283 (C. C. A. 6) the claims were held valid and infringed.  In *General Excavator Co.* v. *Keystone Driller Co.*, 62 F. (2d) 48, 64 F. (2d) 39, the same court found that the owner of the patents had attempted suppression of evidence of prior use, so as to render more certain the sustaining of the Downie patent which was involved in the *Byers* case, and had then used the decree in that case as the basis of application for preliminary injunction in the *General Excavator* case.  Without passing on the merits, therefore, the court because of the plaintiff's unclean hands reversed a decree finding validity and infringement. We affirmed the judgment; 290 U. S. 240.  Meantime the Circuit Court of Appeals has permitted reopening of the *Byers* case and the District Court, after considering proofs as to suppression, has again found the patents valid and infringed.  4 F. Supp. 159, 160.  Its decree has been set aside by the Circuit Court of Appeals, 71 F. (2d) 1000, but it is not clear whether this action nullifies the finding on the merits.  Meantime, also, the District Court which decided the *Byers* and *General Excavator* cases has, in another suit (against Day & Maddock Company) found validity and infringement, and this cause is now pending on appeal.  The petitioner asserts that the original decision of the Circuit Court of Appeals for the Sixth Circuit in the *Byers* case has never been set aside so far as concerns the issues of validity and infringement.

[3] 293 U. S. 539.

*means carried by the boom and connecting the pulling member therewith, and [with] said scoop-carrying member,* a scoop connected with the scoop-carrying member and projecting toward the boom, and a pulling member connected with said scoop."

In the patent drawing is shown a boom pivoted at its base, and a scoop-carrying member, often called a ditcher stick, pivoted to the outer end of the boom. On the boom near its outer end are two uprights, pivoted to the boom, which support a pulley. Two links extend from the axle of the pulley to the top of the ditcher stick, to which they are pivotally attached. The purpose of the contrivance is to raise and lower the boom and to advance or retract the scoop by taking up or slacking a cable passed through the pulley. A second cable, attached to the scoop, limits the outreach of the ditcher stick and pulls the scoop toward the base to fill it with earth. Thus by tension on the hoisting line the boom can be raised and the scoop held out beyond the end of the boom, by slacking on that line the boom can be lowered until the scoop comes into contact with the earth, by tension on the scoop-line the scoop can be pulled against the earth until it is filled. By again taking up on the hoisting line the boom can be raised, the scoop extended, and placed in position for the discharge of its contents. The respondents found they could accomplish the same results by doing away with the links pivoted to the boom, carrying the pulley and the cross-links connecting the pulley with the stick. In some of their apparatus the line passes over pulleys in brackets rigidly mounted on the boom and is fastened to the upper end of the stick; in others a pulley is attached to a link pivoted to the top of the stick; and in still others the pulley is firmly fixed upon the end of the stick.

No claim of novelty is made for a pivoted boom, a ditcher stick pivoted on the end of the boom, or a scoop fastened to the bottom of the stick opening toward the

46

base. The petitioner asserts that the invention consisted in the pivotal means carried by the boom and pivotally attached to it and to the ditcher stick; that this constituted a revolutionary improvement which for the first time made in-digging excavators practicable for use in all sorts of material; that as the patent is basic it should be liberally construed and a large range of equivalents allowed. The respondents, on the other hand, say the invention is in a developed and crowded art, and both the prior art and the evolution of the claims in the Patent Office proceedings require a strict construction of the claim in suit. They assert that in those of their appliances wherein the pulley is held by immovable brackets on the boom there is no " pivotal attachment " of the pulley to the boom, and in those wherein the pulley is linked to the upper end of the ditcher stick, or firmly affixed to it, they neither use a " pivotal means " nor one " carried by the boom." The petitioner replies that any pivotal means comes within the claim; that the method shown in the drawing and described in the specifications is merely a preferred form of application; that a pulley is a pivotal means, and, since the ditcher stick is attached to the boom, if the pulley is affixed or linked to the stick it is necessarily " carried " by the boom. And as in each of the accused devices the respondents employ a pulley either fixed on the boom or the stick or linked to the latter, each employs pivotal means carried by the boom and pivotally connected with the boom and the stick.

We hold, in view of the prior art and of the file wrapper, the petitioner is not entitled to a broad reading of the claim. It is unnecessary to determine whether within the language used a pulley is " a pivotal means," or if attached only to the stick it is " carried by the boom," or whether a pulley so attached can properly be said to connect the pulling member, i. e., the cable, with the boom and the ditcher stick, since a reading of the terms employed as petitioner's position requires, precludes patent-

ability, in view of the prior art, and, in addition, would be contrary to the limitation which the Patent Office file wrapper shows the applicant placed upon his asserted invention.

At the date of filing the application excavators with pivoted booms, with ditcher sticks pivoted to the booms, with lines attached to the scoop and the ditcher stick, and with sheaves upon the boom and at the upper end of the stick, had been patented, and some had been used. Contrivances of these sorts, in which the same line or cable could be used to elevate the boom and to extend the lower end of the ditcher stick, had been in use and had been patented.[4] Prior to Clutter several excavating machines had embodied the device of attaching a pulley by a link to the top of the ditcher stick, or the fixing of a pulley on the end of the stick.[5]

Clutter's application as shown by the file wrapper broadly claimed " means for operating the other [upper] end of the pivotally attached member [ditcher stick] so as to adjust either scoop or boom, singly or together, at the will of the operator." The claim was rejected on the earlier Cross and Fairbanks patents. All of the claims were cancelled and new ones submitted, which included claims 3 and 4 of the patent. These two were alike in the use of the phrase " a pivoted (or pivotal) means carried by the boom and connecting the pulling member therewith and with the scoop-carrying member." In order to distinguish this construction from that of Cross or Fairbanks the applicant's solicitor in a printed argument said:

". . . none of the references disclose . . . means carried by the boom for connecting the pulling member . . . The applicant was the first in the art to mount a means

---

[4] See the following patents: Rood, 386,438; Cross, 808,345; Benedick, 876,517; Fairbanks, 1,056,268.

[5] See Benedick, 876,517; Fairbanks, 1,056,268.

upon the boom for connecting a pulling member therewith but also for connecting the pulling member with the scoop-carrying member."

Claims 3 and 4 so phrased were allowed, but the applicant continued, without success, to press other claims not so narrowly limited.[6]

We do not attribute the force of an estoppel to what was said by the claimant in seeking to avoid the prior art cited against his broad claims, but we do apply the principle that where such broad claims are denied and a narrower substituted, the patentee is estopped to read the granted claim as the equivalent of those which were rejected.[7]  If the claim should be held to comprehend a pulley linked or fixed to the top of the ditcher stick or immovably fastened to the boom, we find such applications in the prior art, upon the basis of which claims worded so broadly as to embrace this method were rejected by the Patent Office and abandoned by the applicant.

The claim in suit would not have been allowed without the limitations that the pivotal means was to be " carried " by the boom, and to " connect " the pulling member (the cable) with both the boom and the stick.  In other words, we find no justification for enlarging the

---

[6] Claims presented and rejected on the prior art embodied such descriptions as: " means carried by the boom for connecting the pulling member therewith and with said scoop-carrying member "; " a pulling member for operating said boom and said scoop-carrying member "; " pulling means for simultaneously shifting said boom and scoop-carrying member."  They were finally cancelled, and effort was abandoned to secure a claim not limited to a pivotal means carried by the boom and connecting the pulling member with the boom and the stick.

[7] *Shepard* v. *Carrigan,* 116 U. S. 593, 597; *Crawford* v. *Heysinger,* 123 U. S. 589, 606; *Roemer* v. *Peddie,* 132 U. S. 313, 316–317; *Royer* v. *Coupe,* 146 U. S. 524; *Corbin Cabinet Lock Co.* v. *Eagle Lock Co.,* 150 U. S. 38; *Hubbell* v. *United States,* 179 U. S. 77, 80, 83; *I. T. S. Rubber Co.* v. *Essex Rubber Co.,* 272 U. S. 429, 443; *Smith* v. *Magic City Kennel Club,* 282 U. S. 784, 788.

scope of what is described, but rather the requirement of strict limitation to that which is specified, namely, a pivotal means carried by the boom and connecting the pulling member with the boom and the stick. We think the court below was right in holding that the respondent's devices did not infringe.

## 2. THE WAGNER PATENT.

This patent is for an "Excavating Scoop." Some of the claims have to do with the construction of the scoop and the manner of mounting it on the ditcher stick. These are not in issue. Claims 6 and 7, on which petitioner relies, differ from claim 4 of the Clutter patent only in this respect: the first claims "means for mounting a sheave to the upper end of the stick" and "a hoisting line passed about the sheave for raising and lowering the boom and stick, and also for moving the stick outwardly lengthwise of the boom . . . ;" and the second claims, "a hoisting line connected to the top of the ditcher stick." One or the other of these claims unquestionably reads upon the respondents' accused devices. But in this patent the applicant adopted the very means of the prior art which was cited against Clutter's application and necessitated the narrowing of his claims as a condition of allowance. In this prior art both methods described in the Wagner patent for connecting the pulling member to the ditcher stick were employed in excavating appliances.[8] The claims were properly held void for want of novelty.

## 3. THE DOWNIE PATENT.

Generally speaking the claimed invention includes three features; in an excavator operating on the principles of that described in the Clutter Patent, a certain form of link to connect a pulley to the top of the ditcher stick, a scoop

[8] See these patents: Williams, 711,449; Benedick, 876,517; Fairbanks, 1,056,268; and Hudson, 1,281,379, granted October 15, 1918, that is, after Clutter and before Wagner.

rigidly connected to the lower end of the stick, having a drop bottom to insure accurate discharge of the excavated material, and side rake teeth on the scoop. Only the claims as to the two last-named elements are involved in these cases. It is uncontradicted that prior to Downie's application drop-bottom scoops had been used on out-digging machines. As designed they would probably not have worked upon an in-digging machine operated upon Clutter's principle. The question is then, as stated by petitioner's counsel, was invention involved in taking a known form of out-digging bucket or scoop, rebuilding and applying it to the Clutter in-digging excavator, and making the changes necessary so that it would perform the alleged new functions and results of Downie. We are convinced that the fixation of the scoop to the stick, the pivoting of a drop bottom near the front of the scoop which could be unlatched to drop the contents and closed by checking the momentum of the scoop, and the addition of rake teeth at the sides of the scoop, were all old in the art and that the combination of them and adaptation of the combined result was a mere aggregation of old elements requiring no more than mechanical skill, and was not, therefore, patentable invention.[9]

The judgments are *Affirmed.*

---

[9] See *Grinnell Washing Machine Co.* v. *Johnson Co.*, 247 U. S. 426, 433; *Powers-Kennedy Corp.* v. *Concrete Mixing & Conveying Co.*, 282 U. S. 175, 186.