E. Vernon **STABLER** et al., Appellants,

v.

**BRIGHT LEAF INDUSTRIES, INC.,**
Appellee.

No. 17321.

United States Court of Appeals
Fifth Circuit.

Nov. 21, 1958.

Rehearing Denied Jan. 22, 1959.

Edward T. Newton, George M. Hopkins, Atlanta, Ga., Calvin Poole, Greenville, Ala., for appellants.

Hugh P. Carter, Birmingham, Ala., Paul B. Bell, Charlotte, N. C., Eaton, Bell, Hunt & Seltzer, Charlotte, N. C., Jennings, Carter & Thompson, Birmingham, Ala., of counsel, for appellee.

Before RIVES, BROWN and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

■ The plaintiff, Bright Leaf Industries, sued the defendants for patent infringement. The patent in suit, issued to Gilder S. Horne June 7, 1949,[1] covers an improved system and apparatus for curing tobacco. The district court, after granting a temporary injunction, held that the defendants had infringed the patent in suit and issued a permanent injunction. The defendants argue that (1) the Horne patent is invalid for want of invention and (2) prior anticipation, and, in any event, there was (3) noninfringement. We reverse the judgment on the ground that the Horne patent is invalid for want of invention.

The Horne patent provides for a number of properly spaced gas burners within a barn where tobacco leaves are hung. The burners are operated from a common source of liquefied petroleum

---

1. At the time of the invention Horne was an officer in Rulane Gas Company. The curing system was first put on the market by Rulane, and subsequently Bright Leaf Industries acquired rights to the invention.

gas, and the temperature is regulated by means of a thermostat. The burners are piped together. The thermostat regulates the flow of gas to the burners in accordance with the temperature within the barn. A perforated cage member is fitted over each burner. In each cage member there is a pan to hold the water given off by the leaves from the heat of the burners. The water is then evaporated in the pans. That is the Horne patent.

Tobacco curing is an old art. Although the methods of curing have differed, the theory of curing has never changed. Curing is predicated on the use of heat to dry the tobacco leaf. The system embodied in the Horne patent is no different. Prior curers, however, had many disadvantages. Some required too much heat in curing. This caused uneven curing. In some cases, the introduction of products of combustion resulted in contamination of the leaf. It was difficult to control the temperature in the units and the barn. The use of oil fuel created unwanted odors, and soot. It created a fire hazard if the flame was open. Low air movement caused excessive and uneven curing. In the main, the difficulty was to find a clean fuel and a way to control the heat so as to get even curing of the leaf. The art evidences numerous attempts to overcome the disadvantages, to construct a curing system that would solve these problems. Horne did it. The use of liquid petroleum gas offered a clean odorless fuel, a fine curing atmosphere. The plurality of gas burners gave increased heat volume and even heat distribution, while the use of the thermostatic device provided a means for evenly controlling the temperature in the barn.

All of the individual elements of the Horne patent are admittedly old. They were known and used for years in one form or another. Gas fuel was avail-able, but not used successfully. The plaintiff claims invention lies in the combination of the elements. The meat of the patent is the use of liquid petroleum gas with the gas burners, controlled by the use of a thermostat. Its commercial success is beyond doubt. Better curing was achieved. The problems of the industry were answered. It appears that the plaintiff is one of the largest manufacturers of gas-fired tobacco curing systems today.

The individual defendants, E. Vernon Stabler, Mrs. Stabler, Hendrick and Gates, are the owners of the defendant corporations, Greenville Butane Gas Co. and Colo-Rite Manufacturing Co. After obtaining information and literature on the plaintiff's curer, they began to manufacture their own curer which is substantially the same. It has a plurality of gas burners spaced in the tobacco barn by branch pipes. Their curer utilizes the same means for regulating gas and controlling the flames as the plaintiffs' curer; the burners, heat spreaders and perforated cage members are substantially the same.

■ The Horne patent is a combination patent. It is an improved system combining old elements of the art in such a manner so as to give rise to better results. The question in all such cases is whether the improved combination of old elements can be raised to the dignity of invention. Was the addition of liquid petroleum gas and the thermostat enough to support a patent? We think not.

In the old case of Hotchkiss v. Greenwood, 1850, 11 How. 248, 52 U.S. 248, 13 L.Ed. 683, the court held that a combination of elements does not constitute an invention if its creation required no more ingenuity and skill than that "possessed by ordinary mechanics acquainted with the business". Section 103 of the Patent Act of 1952 [2] codifies the Hotch-

2. "A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was

kiss "mechanical skill" rule and attempts to lay to rest the "flash of genius" standard of invention. Palmer Co. v. Luden's Inc., 3 Cir., 1956, 236 F.2d 496, 499.

 Inventions require close scrutiny lest patent monopolies be granted to "each slight technological advance in an art" merely because it is useful. Cuno Engineering Corp. v. Automatic Devices Corp., 1941, 314 U.S. 84, 62 S.Ct. 37, 41, 86 L.Ed. 58. Here, Horne found that liquid petroleum gas provided the art with clean and odor-free fuel. A thermostat provided the answer for controlling the temperature in tobacco barns. Horne connected the well known device of a thermostat with the well known device of a Bunsen burner, using a conventional connection. It seems to us that he simply added together several old elements, each independently usable. Each functions in its own way and there is no new coaction between the elements. No doubt the result is a tobacco curer that functions better than other curers. Such a functional difference, however, is not sufficient to sustain a patent. The combined results were a mere aggregation of old elements requiring no more than mechanical skill. As was said in Lincoln Engineering Co. v. Stewart Warner Corp., 1938, 303 U.S. 545, 58 S.Ct. 662, 664, 82 L.Ed. 1008. "The mere aggregation of a number of old parts or elements which, in the aggregation, performed or produced no new or different function or operation than that theretofore performed or produced by them, is not patentable invention."

 The essential factor or element of invention is not established by the fact that the combination of elements has produced a system or apparatus that is more useful in the art than any pre-existing system. Altoona Publix Theatres v. American Tri-Ergon Corp., 1935, 294 U.S. 477, 55 S.Ct. 455, 458, 79 L.Ed. 1005. In the Altoona case, the Court held that the addition of a flywheel to a standard sound recording device, giving the needed uniformity of speed, was not invention. "An improvement to an apparatus or method, to be patentable, must be the result of invention, and not the mere exercise of the skill of the calling or an advance plainly indicated by the prior art." The Court said that the use of the flywheel had been the standard procedure for a long time for securing uniformity of motion. Thus the addition of the flywheel, no matter how skillfully done, no matter how useful in the art, was "still the product of skill, not of invention". In Powers Kennedy Contracting Corp. v. Concrete Mixing & Conveying Co., 1930, 282 U.S. 175, 186, 51 S.Ct. 95, 99, 75 L.Ed. 278, 286, the court said:

"For these reasons we find that the patent (for a concrete conveyer using compressed air) is invalid. It consists of a combination of elements all of which were old in the art. Its application to the transportation of concrete did not involve invention. Neither the combination of old elements or devices accomplishing no more than an aggregate of old results (citing cases) nor the use of an old apparatus or appliance for a new purpose * * is invention."

In the case of Keystone Driller Co. v. Northwest Engineering Corp., 1935, 294 U.S. 42, 50, 55 S.Ct. 262, 266, 79 L.Ed. 747, 752, the court said:

"We are convinced that the fixation of the scoop (in an excavator) to the stick, the pivoting of a drop bottom near the front of the scoop which could be unlatched to drop the contents and closed by checking the momentum of the scoop, and the addition of rake teeth at the sides of the scoop, were all old in the art, and that the combination of them and adaptation of the combined results was a mere aggregation of old elements requiring no

made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be nega-

tived by the manner in which the invention was made." 35 U.S.C.A. § 103.

more than mechanical skill, and were not, therefore, patentable invention."

The important case of Great Atlantic & Pacific Tea Co. v. Supermarket Corp., 1950, 340 U.S. 147, 71 S.Ct. 127, 130, 95 L.Ed. 162, guides the line we draw between mechanical skill on the one hand and invention on the other. In the A & P case, the patentee improved the familiar moveable checking counter that is found in our supermarkets today. The Court held the patent invalid for want of invention. The language of the Court is important:

> "A patent for a combination which only unites old elements with no change in their respective functions, such as presented here, obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men. This patentee had added nothing to the total stock of knowledge, but has merely brought together segments of the prior art and claims them in congregation as a monopoly.

> "The Court of Appeals and the respondent both lean heavily on evidence that this device filled a long-felt want and has enjoyed commercial success. But commercial success without invention will not make patentability. * * * The courts below concurred in finding that every element here claimed (except extension of the counter) was known to prior art. When, for the first time, those elements were put to work for the supermarket type of stores, although each performed the same mechanical function for them that it had been known to perform, they produced results more striking, perhaps, than in any previous utilization. To bring these devices together and apply them to save the time of customer and checker was a good idea, but scores of progressive ideas in business are not patentable, and we

conclude on the findings below that this one was not."

Horne contends that his curer is predicated upon a new inventive concept: Drying, instead of heating, using low, even controlled heat. The claim is somewhat similar to the claim for "So-called balanced heat * * * through substantially even distribution of heat" advanced in General Motors Corp. v. Estate Stove Company, 6 Cir., 1953, 201 F.2d 645, 648. The court considered that the claims with respect to obtaining balanced heat were too indefinite to sustain a finding of validity on this aspect of the patent. With varying degrees of success all tobacco curers use heat for drying tobacco leaves and attempt to secure even controlled heat. It should be noted that Horne did not claim that he had invented a new process but rather an apparatus for carrying out a process.

It may be easy to say now that what Horne did was simple and obvious and that a problem once solved appears as never having presented difficulty. On the other hand it is also easy to say that a successful, perhaps amazing, result must have been the result of an invention. We have to eschew both these not unreasonable points of view and test the validity of a patent in the light of the patent law as it is applied in the courts. As stated by this Court in Butex Gas Co. v. Southern Steel Co., 5 Cir., 1941, 123 F.2d 954:

> " 'The main idea is to combine all of the necessary valves, gauges, and other safety appliances, into a single accessible unit.' * * * 'Applying the rule thus authoritatively settled by this court, we think no invention is shown in assembling these old elements for the purposes declared. No new function is "evolved from this combination;" the new result, so far as one is achieved, is only that which arises from the well-known operation of each one of the elements. * * * From the cooperation of the elements here brought together, no new result, involving

the exercise of the creative faculty which is invention is achieved.' "

In this case Horne put together gas pipes, Bunsen burners, and a thermostat to produce heat and spaced the burners evenly, as anyone would. The pipes, the burners, and the thermostat do not perform any additional or different function in the combination than they do out of it.

Horne's tobacco curer may be an effective and useful curing system. As we see it, however, it was an obvious application of gas to tobacco curing, a plumbing operation that required only mechanical skill.

Our view that the patent is invalid makes it unnecessary for us to discuss the questions of anticipation and infringement.

The judgment is
Reversed.